**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

FEB 11 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

ABSALOM HALL,
    a.k.a "Andrew Hall," "Alex Carter,"
    "Jordan Thomas"

No. 24 CR 50011

Violations: Title 18, United States
Code, Sections 1343, Title 26,
United States Code, Section
7206(2), and Title 18, United States
Code, Section 1957

**SUPERSEDING INDICTMENT**

## COUNTS ONE THROUGH FIVE

The SPECIAL MARCH 2024 GRAND JURY charges that:

1.    At times material to this indictment:

### *The Small Business Administration*

a.    The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

### *The Paycheck Protection Program*

b.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c.    One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called

the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

      d.     To obtain a PPP loan, a business, sole proprietor, or self-employed individual submitted a PPP loan application, which was signed by the applicant or an authorized representative of the business. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, proprietorship, or individual. In the application, businesses, sole proprietors, and self-employed individuals were required to provide, among other things, their number of employees and average monthly payroll. This figure was used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were also required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations.

      e.     PPP loan proceeds were required to be used by the business, sole proprietorship, or self-employed individual for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA if the business, sole proprietorship, or self-employed individual spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

2

f.      To gain access to funds through the PPP, businesses, sole proprietorships, and self-employed individuals applied to financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

g.      Businesses, sole proprietors, and self-employed individuals that obtained PPP loans and used the full loan amount were allowed to obtain additional funds through the PPP by submitting a Second Draw Borrower Application Form ("Second Draw Application"), which was signed by the applicant or an authorized representative of the business. The Second Draw Application required the applicants to again acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, and again provide their number of employees and average monthly payroll. These figures were again used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were again required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations and that the applicants had used the full amount of the initial PPP loan only for eligible expenses.

h.      Participating lenders required applicants for PPP loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's payroll, income, operating expenses, and how the PPP loan would be used, which information

3

was material to (i) lenders' approval, terms, and funding of loans and (ii) the SBA's decision to guarantee and to forgive the loans.

*Lenders*

i.      Lender A and Lender B were third-party lenders that processed PPP applications and funded PPP loans to approved borrowers. Lender A and Lender B maintained computer servers that were located outside of Illinois.

*The Scheme to Defraud*

2.      Beginning in or around June 2020 and continuing through in or around June 2021, in the Northern District of Illinois, and elsewhere,

ABSALOM HALL,
a.k.a "Andrew Hall," "Alex Carter," "Jordan Thomas"

defendant herein, together with others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PPP funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.      It was part of the scheme that ABSALOM HALL and others, for the purpose of fraudulently obtaining approximately $85,401 in PPP funds, submitted approximately five applications for loans under the PPP Program on behalf of purported sole proprietorships doing business under the names Absalom Hall, Andrew Hall, Alex Carter, and Jordan Thomas (together, the "Fictitious

4

Proprietorships"); which applications contained materially false statements and misrepresentations concerning, among other things, the purported entities' owner, gross income, type of business, payroll, operating expenses, and existence as entities with ongoing operations.

4. It was further part of the scheme that ABSALOM HALL, and others, prepared PPP loan applications that were submitted to Lenders A and B (together, the "Lenders"), on behalf of the Fictitious Proprietorships, in which applications the defendant falsely and fraudulently represented that each Fictitious Entity was a sole proprietorship that was owned by him or a fictitious person, had earned income in 2020, and was in operation on February 15, 2020, and that all PPP loan proceeds would be used only for business related purposes. HALL knew at the time that the Fictitious Proprietorships were not ongoing operations, that neither he nor any of the fictitious persons identified in the applications owned or operated the Fictitious Proprietorships, that the Fictitious Proprietorships had no income and were not in operation on February 15, 2020, and that he intended to use the loan funds for his personal use and benefit.

5. It was further part of the scheme that, to substantiate the claimed loss of income, ABSALOM HALL, and others, prepared, and submitted to the Lenders, copies of false IRS tax filings (including IRS Forms 1040 Schedule C) that fraudulently represented that the Fictitious Proprietorships had earned income and other compensation in tax years 2019. Defendant knew at the time that the Fictitious

5

Proprietorships had earned no income or other compensation for which federal taxes were paid during that period.

6. It was further part of the scheme that ABSALOM HALL, and others, opened bank accounts and credit cards in the names of several of the fictitious owners of the Fictitious Proprietorships, including "Andrew Hall", "Alex Carter" and "Jordan Thomas"; and directed the Lenders to deposit the proceeds of fraudulently obtained PPP loans into those bank accounts, as well as his own bank accounts, all of which defendant controlled. Defendant opened these accounts in the names of those fictitious persons to induce the SBA, the Lenders, and others to falsely believe that the accounts belonged to legitimate and operational sole proprietorships.

7. It was further part of the scheme that, through the submission of the false and fraudulent PPP loan applications, ABSALOM HALL, and others, caused the Lenders to disburse approximately $85,401 in PPP loan proceeds into bank accounts that he controlled.

8. It was further part of the scheme that ABSALOM HALL, and others, used the PPP funds that the Lenders disbursed based on the fraudulent PPP applications to make cash withdrawals, to purchase goods and services, to purchase a vehicle and a house, and to transfer funds between various accounts that he controlled, all for his personal use and benefit.

9. It was further part of the scheme that ABSALOM HALL, and others, misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and

hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

10. On or about the dates set forth below, in the Northern District of Illinois, Western Division, and elsewhere, defendant, as set forth below, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | Defendant | Date | Description of Act |
|---|---|---|---|
| One | ABSALOM HALL | March 10, 2021 | an internet transmission of a PPP loan application on behalf of "Absalom Hall," to Lender A's computer servers located outside of Illinois |
| Two | ABSALOM HALL, a.k.a "Andrew Hall" | March 22, 2021 | an internet transmission of a PPP loan application on behalf of "Andrew Hall," to Lender B's computer servers located outside of Illinois |
| Three | ABSALOM HALL a.k.a "Alex Carter" | March 25, 2021 | an internet transmission of a PPP loan application on behalf of "Alex Carter," to Lender B's computer servers located outside of Illinois |
| Four | ABSALOM HALL | March 31, 2021 | an internet transmission of a second draw PPP loan application on behalf of "Absalom Hall," to Lender A's computer servers located outside of Illinois |
| Five | ABSALOM HALL, a.k.a. "Jordan Thomas" | April 9, 2021 | an internet transmission of a PPP loan application on behalf of "Jordan Thomas," to Lender B's computer servers located outside of Illinois |

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about June 27, 2022, in the Northern District of Illinois, Western Division, and elsewhere,

### ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer T.S., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2021. The return was false and fraudulent as to material matters including that: (a) Taxpayer T.S. did not qualify for education credits in 2021 in the amount of $1,000 on line 8 of Form 8863; (b) Taxpayer T.S. did not qualify for qualified sick and family leave credits totaling $29,080 in 2021 on lines 13b and 13h of Schedule 3; (c) Taxpayer T.S. did not operate a business in 2021 as listed on Schedule C and did not earn a net profit of $7,452 on line 31; and (d) Taxpayer T.S. did not overpay $30,087 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

8

## COUNT SEVEN

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about June 28, 2022, in the Northern District of Illinois, Western Division, and elsewhere,

## ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer H.H., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2021. The return was false and fraudulent as to material matters including that: (a) Taxpayer H.H. did not qualify for qualified sick and family leave credits totaling $29,680 in 2021 on lines 13b and 13h of Schedule 3; (b) Taxpayer H.H. did not operate a business in 2021 as listed on Schedule C and did not earn a net profit of $5,776 on line 31; and (c) Taxpayer H.H. did not overpay $29,686 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

9

## COUNT EIGHT

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about July 20, 2022, in the Northern District of Illinois, Western Division, and elsewhere,

### ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer A.S., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2021. The return was false and fraudulent as to material matters including that: (a) Taxpayer A.S. did not qualify for qualified sick and family leave credits totaling $30,040 in 2021 on lines 13b and 13h of Schedule 3; (b) Taxpayer A.S. did not operate a business in 2021 as listed on Schedule C and did not earn a net profit of $3,160 on line 31; and (c) Taxpayer A.S. did not overpay $28,115 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

10

## COUNT NINE

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about August 4, 2022, in the Northern District of Illinois, Western Division, and elsewhere,

### ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer C.S., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2021. The return was false and fraudulent as to material matters including that: (a) Taxpayer C.S. did not qualify for education credits in 2021 in the amount of $1,000 on line 8 of Form 8863; (b) Taxpayer C.S. did not qualify for qualified sick and family leave credits totaling $29,000 in 2021 on lines 13b and 13h of Schedule 3; (c) Taxpayer C.S. did not operate a business in 2021 as listed on Schedule C and did not earn a net profit of $5,187 on line 31; and (d) Taxpayer C.S. did not overpay $30,005 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

11

## COUNT TEN

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about July 15, 2022, in the Northern District of Illinois, Western Division, and elsewhere,

### ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer H.S., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2021. The return was false and fraudulent as to material matters including that: (a) Taxpayer H.S. did not qualify for qualified sick and family leave credits totaling $20,010 in 2021 on lines 13b and 13h of Schedule 3; (b) Taxpayer H.S. did not operate a "Mechanic" business in 2021 as listed on Schedule C and did not earn a net profit of $4,554 on line 31; and (c) Taxpayer H.S. did not overpay $20,012 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

12

## COUNT ELEVEN

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about April 15, 2023, in the Northern District of Illinois, Western Division, and elsewhere,

### ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer S.M., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2022. The return was false and fraudulent as to material matters including that: (a) Taxpayer S.M. did not qualify for education credits in 2022 in the amount of $1,000 on line 8 of Form 8863; (b) Taxpayer S.M. did not qualify for fuel tax credits of $29,866 in 2022 on line 17 of Form 4136; and (c) Taxpayer S.M. did not overpay $30,558 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

13

## COUNT TWELVE

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about April 15, 2023, in the Northern District of Illinois, Western Division, and elsewhere,

### ABSALOM HALL,

defendant herein, willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer A.S., namely, a U.S. Individual Income Tax Return, Form 1040, for tax year 2022. The return was false and fraudulent as to material matters including that: (a) Taxpayer A.S. did not qualify for education credits in 2021 in the amount of $1,000 on line 8 of Form 8863; (b) Taxpayer A.S. did not operate a business in 2022 as listed on Schedule C and did not incur a loss of $7,750 on line 31; and (c) Taxpayer A.S. did not over pay $1,825 as listed on line 34 of Form 1040; when as defendant HALL knew at the time, these statements were false;

In violation of Title 26, United States Code, Section 7206(2).

14

## COUNT THIRTEEN

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about June 1, 2021, in the Northern District of Illinois, Western Division, and elsewhere,

ABSALOM HALL,
a.k.a "Andrew Hall," "Alex Carter," "Jordan Thomas"

defendant herein, did knowingly engage in a monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the payment of approximately $23,060, via wire transfer, to Rosen Hyundai in Algonquin, Illinois, for the purchase of a 2021 Hyundai Venue SEL, hatchback, bearing VIN: KMHRC8A36MU082221, such property having been derived from a specified unlawful activity, namely, wire fraud;

In violation of Title 18, United States Code, Section 1957.

15

## COUNT FOURTEEN

The SPECIAL MARCH 2024 GRAND JURY further charges:

On or about June 28, 2021, at Rockford, in the Northern District of Illinois, Western Division, and elsewhere,

ABSALOM HALL,
a.k.a "Andrew Hall," "Alex Carter," "Jordan Thomas"

defendant herein, did knowingly engage in a monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the payment of approximately $34,200 to FAV Investments in Rockford, for the purchase of a residence located at 323 Alliance Avenue in Rockford, such property having been derived from a specified unlawful activity, namely, wire fraud;

In violation of Title 18, United States Code, Section 1957.

16

## FORFEITURE ALLEGATION

The SPECIAL MARCH 2024 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Sections 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C), and any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

2.     The property to be forfeited includes, but is not limited to:

a.     a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343, estimated to be approximately $85,401.

b.     A 2021 Hyundai Venue SEL, hatchback, bearing VIN: KMHRC8A36MU082221; and

c.     real property located at 323 Alliance Avenue, Rockford, Illinois.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

17

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

FOREPERSON ∪

ACTING UNITED STATES ATTORNEY

18