FILED

DEC 08 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

UNITED STATES OF AMERICA

v.

ABSALOM HALL

No. 24CR50011

Judge Lindsay C. Jenkins

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant ABSALOM HALL, and his attorney, PETER MOYER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1-5), aiding and assisting the preparation of false tax returns, in violation of Title 26, United States Code, Section 7206(2) (Counts 6-12), and money laundering, in violation of Title 18, United States Code, Section 1957 (Counts 13 and 14).

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count Two, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; Count Eleven, which charges defendant with aiding and assisting in the preparation of false tax returns, in violation of Title 26, United States Code, Section 7206(2); and Count Thirteen, which charges defendant with money laundering, in violation of Title 18, United States Code, Section 1957. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Two, Eleven, and Thirteen of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     With respect to Count Two of the Superseding Indictment:

Beginning in or around June 2020, and continuing until at least in or around June 2021, in the Northern District of Illinois, Western Division, and elsewhere, defendant ABSALOM HALL knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with

2

applications for Paycheck Protection Program ("PPP") funds, by means of materially false and fraudulent pretenses, representations, and promises: and on or about March 22, 2021, for the purpose of executing the scheme, defendant knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an internet transmission of a PPP loan application on behalf of "Andrew Hall" to Lender B's computer servers located outside of Illinois, in violation of Title 18, United States Code, Section 1343.

Specifically, defendant acknowledges that the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. Defendant further acknowledges that one source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietorships for job retention and certain other expenses, through the PPP, which was implemented by the Small Business Administration ("SBA").

Defendant knew that, to obtain a PPP loan, a sole proprietor was required to submit and sign a PPP loan application, in which the applicant was required to certify that they had a sole proprietorship in operation on or before February 15, 2020, and that economic uncertainty at the time of the application made the loan request necessary to support the sold proprietor's ongoing operations. Defendant knew that sole proprietors also had to provide, among other things, the number of individuals

3

employed and average monthly payroll. Defendant acknowledges that information about the PPP applicants' sole proprietorship was material to the lenders' approval, terms, and funding of PPP loans.

Between June 2020 and June 2021, it was part of the scheme that defendant, for the purpose of obtaining approximately $85,401 in PPP funds, submitted at least five applications for loans and advances under the PPP Program to Lender A and Lender B, seeking funds for sole proprietorships doing business under the names Absalom Hall, Andrew Hall, Alex Carter, and Jordan Thomas (together, the "Fictitious Proprietorships"). In these applications, defendant falsely and fraudulently made materially false statements misrepresentations concerning, among other things, the purported entities' owner, gross income, type of business, payroll, operating expenses, and existence as entities with ongoing operations.

On or about March 22, 2021, defendant prepared and submitted to Lender B via the internet, a PPP loan application on behalf of "Andrew Hall". In this application, defendant falsely and fraudulently represented that "Andrew Hall" was a real person operating a sole proprietorship engaged in tax preparation services. Defendant attached a copy of a fraudulent Illinois driver's license bearing the name "Andrew Hall" but with a photograph of defendant. Defendant also included a fraudulent Schedule C from tax year 2019, which falsely represented Andrew Hall's business income as $89,988. Defendant knew at the time he submitted this PPP application that Andrew Hall was a fictitious person, and that Andrew Hall was not

4

engaged in legitimate tax preparation, and that Andrew Hall did not have business income of $89,988 in tax year 2019. Defendant acknowledges that in submitting this PPP application, he knowingly caused to be transmitted by means of wire communication, an internet transmission from Illinois to Lender B's computer servers located outside of Illinois.

As a result of his submission of this false and fraudulent application, on or about March 29, 2021, defendant caused Lender B to disburse a PPP loan for $18,747 for Andrew Hall into a bank account that defendant solely controlled in the name of "Andrew Hall. Defendant knew at the time that neither he nor Andrew Hall—a fictitious person—were entitled to these PPP funds. Defendant thereafter used these funds for his personal use and benefit, and not for legitimate PPP approved purposes.

Additionally, defendant submitted the following false and fraudulent applications on behalf of himself and fictitious persons "Alex Carter" and "Jordan Thomas". Defendant acknowledges that as a result of his submission of the following false and fraudulent applications, defendant caused Lender A and Lender B to rely on the false and fraudulent misrepresentations to disburse funds into bank accounts that he solely controlled, and that he used the disbursed funds for his own personal use and benefit:

- On or about March 10, 2021 and March 31, 2021, defendant submitted PPP loan applications on behalf of himself. Defendant included false representations that resulted in Lender A disbursing $24,994.

- On or about March 25, 2021, defendant submitted a PPP loan application in the name "Alex Carter". Defendant included false

5

representations, including that "Alex Carter" was not a real person, that resulted in Lender B disbursing $20,830.

- On of about April 9, 2021, defendant submitted a PPP loan application on behalf of "Jordan Thomas." Defendant included false representations, including that "Jordan Thomas" was not a real person, that resulted in Lender B disbursing $20,830.

It was further part of the scheme that defendant used the PPP funds that the Lenders disbursed based on the fraudulent PPP applications to make cash withdrawals, to purchase goods and services, to purchase a vehicle and a house, and to transfer funds between various accounts that he controlled, all for his personal use and benefit.

    b.    <u>With respect to Count Eleven of the superseding indictment</u>:

On or about April 15, 2023, in the Northern District of Illinois, Western Division, and elsewhere, defendant ABSALOM HALL willfully aided and assisted in, and procured, counseled, and advised, the preparation and presentation to the IRS of an individual return and claim on behalf of Taxpayer S.M., namely a U.S. Individual Tax Return Form 1040, for tax year 2022. The return was false and fraudulent as to material matters including that: (a) Taxpayer S.M. did not qualify for education credits in 2022 in the amount of $1,000 on line 8 of Form 8863; (b) Taxpayer S.M. did not qualify for fuel tax credits of $29,866 in 2022 on line 17 of Form 4136; and (c) Taxpayer S.M. did not overpay $30,558 as listed on line 34 of Form 1040, when as

6

defendant knew at the time, these statements were false, in violation of Title 26, United States Code, Section 7206(2).

Between approximately June 2022 through April 2023, defendant held himself out as operating a tax preparation business, named "Lootland Tax Prep". Defendant advertised on social media and presented himself as an income tax preparer and held himself out to clients as a person trained in and knowledgeable about the preparation of filing federal income tax returns. Defendant prepared federal income tax returns and filed those returns on behalf of individual taxpayers who provided personal identifying information and various financial information to defendant. Defendant promised a large federal tax return to these clients, and accepted compensation from many clients in return for preparing federal tax refunds. In some instances, defendant allocated part of the tax refund to be deposited into bank accounts he controlled or by requesting an ACH debit card be sent to him or other individuals. Defendant did not report on his 2021 or 2022 individual income tax returns, Forms 1040, on the Schedule C or elsewhere, any income he made through tax preparation or allocation of tax refunds. Defendant did not have an Internal Revenue Service ("IRS")-issued Preparer Tax Identification Number ("PTIN") to prepare federal income tax returns. Defendant acknowledges that he was in the business of preparing or assisting in the preparation of tax returns.

On or about April 15, 2023, defendant willfully assisted in the preparation of Taxpayer S.M.'s Form 1040 and attachments for tax year 2022. Taxpayer S.M.

7

provided defendant with minimal personal identifying information and bank account information. Defendant, without Taxpayer S.M.'s knowledge, falsely and fraudulently prepared Taxpayer S.M.'s Form 1040 with respect to at least the following material matters: (a) Taxpayer S.M. did not qualify for education credits in 2022 in the amount of $1,000 on line 8 of Form 8863; (b) Taxpayer S.M. did not qualify for fuel tax credits of $29,866 in 2022 on line 17 of Form 4136; and (c) Taxpayer S.M. did not overpay $30,558 as listed on line 34 of Form 1040. Defendant knew that such statements were false and fraudulent when defendant prepared and filed Taxpayer S.M.'s Form 1040 for tax year 2022 with the IRS, but nevertheless, filed the return in order to obtain a falsely inflated refund. Defendant further failed to identify himself as a paid tax preparer on Taxpayer S.M.'s Form 1040. Defendant allocated to himself approximately $10,000 from Taxpayer S.M.'s anticipated tax refund.

As a result of defendant's misrepresentations, the Department of Treasury issued a refund payment to Taxpayer S.M. that was greater than that to which Taxpayer S.M. was entitled. Defendant's false and fraudulent filing on behalf of Taxpayer S.M. caused a loss to the United States for a corrected refund of $30,866.

In addition, defendant willfully assisted in the preparation of numerous other false federal individual tax returns on behalf of taxpayer clients in tax years 2021 and 2022. Those returns included similar false entries, and defendant filed these false forms with the IRS. More specifically, defendant fraudulently and intentionally reduced the tax liabilities and increased the tax refunds for his taxpayer clients,

8

including but not limited to five individuals: Taxpayers T.S. (2021), H.H. (2021), A.S. (2021 and 2022), C.S. (2021) and H.S. (2021).

Defendant misrepresented on the filed returns the taxpayers' eligibility to deduct from their taxable income certain expenses, including certain fictitious business expenses. Defendant also misrepresented taxpayers' eligibility for education tax credits. By knowingly providing materially false information in the individual tax returns, defendant fraudulently reduced the taxpayers' tax liabilities and improperly qualified taxpayers for refunds that were greater than those to which the taxpayers were entitled. Defendant further failed to identify himself as a paid tax preparer on his taxpayer clients' Forms 1040.

The total refund amount for T.S.'s 2021 taxes was $30,087. The total refund amount for H.H.'s 2021 taxes was $29,686, of which $7,500 was paid to defendant in cash. The total corrected refund amount for A.S.'s 2021 taxes was $29,643, of which $3,000 was paid via direct deposit to a bank account solely controlled by defendant. The total refund for A.S.'s 2022 taxes was $3,384. The total refund for C.S.'s 2021 taxes was $29,287. Defendant admits that the total tax loss for the charged and relevant conduct is $152,953.

      c.     With respect to Count Thirteen of the superseding indictment:

On or about June 1, 2021, in the Northern District of Illinois, Western Division, and elsewhere, defendant did knowingly engage in a monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value

greater than $10,000, that is the payment of approximately $23,060, via wire transfer, to Rosen Hyundai in Algonquin, Illinois, for the purchase of a 2021 Hyundai Venue SEL, hatchback, bearing VIN: KMHRC8A36MU082221, such property having been derived from a specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1957.

Specifically, defendant used funds deposited into his personal bank accounts, derived from the above schemes, to purchase real property located at 323 Alliance Avenue, in Rockford, Illinois, as well as a 2021 Hyundai Venue SEL from Rosen Hyundai. Between March and June 2021, approximately $64,571 was deposited into defendant's bank accounts. On June 1, 2021, defendant sent a wire transfer to Rosen Hyundai for the purchase of a vehicle in the amount of $23,060. Further, on June 28, 2021, defendant caused to be issued a cashier's check in the amount of $34,200 for the purchase of 323 Alliance Avenue. Defendant acknowledges that the total for these purchases is $57,260, and that the funds used to purchase the Hyundai and 323 Alliance Avenue were derived from the wire fraud as described above.

**Maximum Statutory Penalties**

7.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count Two carries a maximum sentence of 20 years' imprisonment. Count Two also carries a maximum fine of $250,000 or twice the gross gain or loss from the offense, whichever is greater. Defendant further understands

10

that with respect to Count Two the judge also may impose a term of supervised release of not more than three years.

      b.     Count Eleven carries a maximum sentence of 3 years' imprisonment. Count Eleven also carries a maximum fine of $250,000 or twice the gross gain or loss from the offense, whichever is greater. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Eleven, the judge also may impose a term of supervised release of not more than one year.

      c.     Count Thirteen carries a maximum sentence of 10 years' imprisonment. Count Thirteen also carries a maximum fine of $250,000 or twice the gross gain or loss from the offense, whichever is greater. Defendant further understands that with respect to Count Thirteen the judge also may impose a term of supervised release of not more than three years.

      d.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

      e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 33 years' imprisonment. In addition, defendant is subject to a total maximum fine of $750,000 or twice the gross gain or loss from the offenses, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $300, in addition to any restitution ordered by the Court.

11

## Sentencing Guidelines Calculations

8.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2025 Guidelines Manual.

12

b.     **Offense Level Calculations.**

**Count Two: Wire Fraud**

i.     The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1), because the offense of conviction is referenced to that Guideline and the offense of conviction has a statutory maximum term of imprisonment of 20 years or more.

ii.     The offense level is increased by 6 levels, pursuant to Guideline § 2B1.1(b)(1)(E), because the loss exceeded $40,000 but was less than $95,000.

iii.     The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(12), because the offense involved conduct described in 18 U.S.C. § 1040.

iv.     The total offense level for Count Two is 15.

**Count Eleven: Aiding and Assisting the Preparation of a False Tax Return**

v.     The base offense level is 16, pursuant to Guidelines §§ 2T1.4(a)(1) and 2T4.1, because the tax loss for the offense and relevant conduct exceeds $100,000 but does not exceed $250,000.

vi.     The offense level is increased by 2 levels, pursuant to Guideline § 2T1.4(b)(1)(B), because defendant was in the business of preparing or assisting in the preparation of tax returns.

vii.     The total offense level for Count Eleven is 18.

13

**Count Thirteen: Money Laundering**

viii.        The base offense level is 15, pursuant to Guideline § 2S1.1(a)(1), because the defendant committed the underlying offense of wire fraud and the offense level for that offense can be determined.

ix.        The offense level is increased by 1 level, pursuant to Guideline § 2S1.1(b)(2)(A), because defendant was convicted under 18 U.S.C. 1957.

x.        The total offense level for Count Thirteen is 16.

### Grouping

xi.        Pursuant to Guideline § 3D1.1 and § 3D1.2(d), Counts Two and Thirteen are grouped, with the total offense level for the group as 16 pursuant to Guideline § 3D1.3(a). Pursuant to Guideline § 3D1.2, Count Eleven forms a separate group.

xii.        Pursuant to Guideline § 3D1.4(a), because the offense level for Count Eleven is two levels higher than the offense level for Counts Two and Thirteen, Counts Two and Thirteen are assigned one unit, for a total number of units of two.

xiii.        Pursuant to Guideline § 3D1.4, with a total number of units as two, two levels are added to the Group with the highest offense level, which is an offense level of 18 for Count Eleven. Therefore, the adjusted offense level is 20.

xiv.        The government understands that defendant will truthfully admit the conduct comprising the offense(s) of conviction and truthfully

14

admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xv.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal 14 and defendant's criminal history category is VI:

15

i.     On or about June 13, 2007, defendant was convicted of aggravated battery in the Circuit Court of Cook County (2006CR36020) and sentenced to 3 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this conviction.

ii.     On or about May 20, 2009, defendant was convicted of aggravated unlawful use of weapons in the Circuit Court of Cook County (2009CR0806001) and sentenced to 4 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this conviction.

iii.     On or about February 1, 2011, defendant was convicted of unlawful possession of a weapon in the Circuit Court of Cook County (2010CR0329601) and sentenced to 4 years' imprisonment to run concurrent with the sentence imposed in paragraph 9(c)(ii) above. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this conviction.

iv.     On April 10, 2014, defendant was convicted of misdemeanor manufacturing/delivering marijuana in the Circuit Court of Cook County (14118813001) and sentenced to 2 days' imprisonment. Pursuant to § 4A.1.1(c), defendant receives 1 criminal history point for this conviction.

v.     On July 10, 2014, defendant was convicted of possession of controlled substances in the Circuit Court of Cook County (2013CR1264101) and sentenced to 7 days in jail and two years' probation. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

16

vi.  On October 16, 2019, defendant was convicted of the misdemeanor offense of driving under the influence in the Circuit Court of Kane County (2019DT594) and sentenced to 18 months' court supervision and 100 hours of community service. A petition to revoke supervision was dismissed on July 16, 2021. Pursuant to Guideline § 4A1.1(c), defendant receives 1 point for this conviction.

vii.  On or about October 30, 2023, defendant was convicted of the misdemeanor offense of driving under the influence in the Circuit Court of Winnebago County (23DT220) and sentenced to 12 months' conditional discharge. Pursuant to § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

viii.  On or about May 20, 2024, defendant was convicted of the misdemeanor offense of driving on a revoked license in the Circuit Court of Winnebago County (24MT992) and sentenced to 24 months' conditional discharge and 240 hours of public service work. Pursuant to § 4A1.2(c)(1), defendant receives 0 points for this conviction.

ix.  Because defendant received 7 or more points under Guideline § 4A1.1(a)-(d), and committed the instant offense while under a criminal justice sentence, namely, court supervision imposed in connection with his October 16, 2019, conviction for driving under the influence described in paragraph 9(c)(vi) above, defendant receives 1 criminal history point, pursuant to Guideline § 4A1.1(e).

d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the government

17

anticipates the offense level to be 17 which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 51 to 63 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The

18

government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to victims of Count Two, in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14.     Additionally, defendant agrees to pay restitution, arising from Count Eleven, totaling $30,866 to the Internal Revenue Service, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

19

15. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16. Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

18. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

20

## Forfeiture

19.     Defendant understands that, by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property, constituting or derived from proceeds obtained, directly or indirectly, as a result of the offenses.

20.     Defendant agrees to the entry of a personal money judgment in an amount to be determined by the Court at sentencing, which represents the total amount of proceeds traceable to defendant's wire fraud offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay. Defendant acknowledges that as part of his sentence, the Court will decide, by a preponderance of the evidence, whether the government has established the amount of a personal money judgment he must pay.

21.     Defendant also agrees to forfeiture of the following specific property to the United States: a 2021 Hyundai Venue SEL, hatchback, bearing VIN: KMHRC8A36MU082221. In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offenses, as alleged in the superseding indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in

21

the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

22. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

23. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 24CR50011.

25. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States

Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

26. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse.

### Waiver of Rights

27. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

23

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

24

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

28.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

29.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and

any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

30.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

31.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy

26

of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

32. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

33. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

34. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this

27

Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

37. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

[Continued on Next Page]

28

38.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 12/8/25

RONALD DEWALD   Digitally signed by RONALD DEWALD
                Date: 2025.11.13 10:54:00 -06'00'

Ronald DeWald on behalf of
ANDREW S. BOUTROS
United States Attorney

ABSALOM HALL
Defendant

JESSICA S. MAVEUS
Assistant U.S. Attorney

PETER MOYER
Attorney for Defendant

29